OPINION
{¶ 1} Melissa S. Brown appeals her seven-year sentence for aggravated theft and tampering with records. Ms. Brown pled guilty to both counts after it was discovered she embezzled over $150,000 from the First Church of Christ by abusing her position as the assistant finance administrator to tamper with the accounting records, charge personal items, and misappropriate money that was meant for missionaries and church programs. *Page 2 
 {¶ 2} A repeat embezzler, Ms. Brown argues that the court erred by sentencing her to consecutive and maximum sentences because she is genuinely remorsefully this time. But our review, however, reveals that Ms. Brown's pattern of thievery followed by expression of regret only underscores the observation of the French philosopher, Jean Jacques Rousseau: "Remorse goes to sleep during a prosperous period and wakes up in adversity." Confessions T, 11. Ms. Brown's sentence is neither contrary to law as the trial court properly considered the factors of R.C. 2929.11 and R.C. 2929.12, nor an abuse of discretion because the court's sentence is clearly supported by the record in this case. Thus, we affirm.
 {¶ 3} Substantive and Procedural Facts
 {¶ 4} Ultimately, Ms. Brown admitted to embezzling over $150,000 of church funds to purchase luxury items and vacations for her and her family by misappropriating funds meant for various missionaries and programs that support the church. As the assistant finance administrator, Ms. Brown had sole control over the church's accounts. An investigation ensued after several missions called the church asking why their monthly donations from the church had stopped. While the investigation was ongoing, Ms. Brown tampered with the church's database to make it appear that the missing funds were withdrawn in 1998. The records were altered to such an extent they continue to be a problem for the church today as it attempts to regain its financial and congregational foothold.
 {¶ 5} This is Ms. Brown's third such offense. Each time she has embezzled from her place of employment in ever increasing amounts, even though she underwent treatment and counseling, and was placed on probation for the previous two federal *Page 3 
offenses. Eventually, Ms. Brown admitted to the police and the church that she stole funds and tampered with the database in the instant case.
 {¶ 6} Ms. Brown pled guilty to one count of aggravated theft, in violation of R.C. 2913.02(A)(3), and tampering with records, in violation of R.C. 23113.42(A)(1), both felonies of the third degree and subject to a maximum penalty of five years.
 {¶ 7} Ms. Brown was then sentenced to consecutively serve five years on the count of aggravated theft and two years on the count of tampering with records, for a seven-year total term of imprisonment and ordered to pay restitution in the amount of $153,722.88. She was also notified that post-release control is optional in this case for up to three years, as well as the consequences of violation.
 {¶ 8} Ms. Brown timely raises one assignment of error:
 {¶ 9} "The trial court erred by sentencing the defendant-appellant to a maximum and consecutive term of imprisonment."
 {¶ 10} Specifically, Ms. Brown contends the court erred in imposing such a prison term because the court's findings under R.C. 2929.12 are not supported by the record.
 {¶ 11} Standard of Review post Foster
 {¶ 12} "Regarding maximum and consecutive sentences, in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio severed and excised R.C. 2929.14(C) and (E), which required judicial fact-finding for an imposition of maximum and consecutive sentences, respectively. The court held that the trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum or consecutive sentences. Consequently, when a trial court imposes such punishment on a defendant, *Page 4 
we no longer review the record to determine if the record supports its findings." State v. Stewart, 11th Dist. No. 2008-L-112, 2009-Ohio-921, ¶ 8, citing Foster at paragraph seven of the syllabus; see, State v.Swank, 11th Dist. No. 2008-L-019, 2008-Ohio-6059, ¶ 28.
 {¶ 13} "Rather, when reviewing a felony sentence post Foster, we are now required to engage in a two-step analysis recently set forth by the Supreme Court of Ohio in State v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912." Id. at ¶ 9.
 {¶ 14} The Supreme Court of Ohio explained that "[i]n applyingFoster to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id. at ¶ 10, quotingKalish at ¶ 4.
 {¶ 15} "The first prong of the analysis instructs that `the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G).'" Id. at ¶ 11, citing Kalish at ¶ 14.
 {¶ 16} "The applicable statutes to be applied by a trial court include the felony sentencing statutes R.C. 2929.11 and R.C. 2929.12, which are not fact-finding statutes like R.C. 2929.14." Id. at ¶ 12, quotingKalish at ¶ 17. "Therefore, as part of its analysis of whether the sentence is clearly and convincingly contrary to law, an appellate court *Page 5 
must ensure that the trial court considered the purposes and principles of R.C. 2929.11 and the factors listed in R.C. 2929.12." Id. at ¶ 12.
 {¶ 17} In "applying this first-prong of the analysis, the court inKalish concluded that the trial court's sentence was not clearly and convincingly contrary to law, because (1) the trial court `expressly stated that it considered the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12,' (2) it properly applied post-release control, and (3) the sentence was within the permissible range." Id. at ¶ 13, citing Kalish at ¶ 18.
 {¶ 18} Once a reviewing court is satisfied the sentence is not contrary to law, then the court must engage in the "second prong of the analysis, which requires an appellate court to determine whether the trial court abused its discretion in selecting a sentence within the permissible range." Id. at ¶ 14, citing Kalish at 18.
 {¶ 19} In Kalish, the Supreme Court of Ohio found no abuse of discretion, noting that the trial court "gave careful and substantial deliberation to the relevant statutory considerations [of R.C. 2929.11
and R.C. 2929.12]," and that there was "nothing in the record to suggest the trial court's decision was unreasonable, arbitrary, or unconscionable." Id. at ¶ 16, quoting Kalish at ¶ 20. See, also,State v. Brunelle-Apley, 11th Dist. No. 2008-L-014, 2008-Ohio-6412, ¶ 133-146.
 {¶ 20} Similarly, in this case, there is nothing to suggest that the court's sentence is contrary to law nor did the court abuse its discretion in sentencing Ms. Brown to a consecutive seven-year sentence for the two offenses. Specifically, the court sentenced her to serve five years on the count of aggravated theft and two years on the *Page 6 
count of tampering with records, as well as ordered her to pay restitution for the amount embezzled.
 {¶ 21} The court explicitly considered all relevant factors and so informed Ms. Brown at sentencing in detail as follows: "the presentence report and investigation that was prepared in connection with this case. I have considered the psychological evaluation * * *, I have received a letter from [Ms. Brown's counsel] outlining a plan she put together. That's been considered as well by this Court. This Court did receive, prior to the hearing today, multiple victim impact statements, * * * from different members of the church. Each and every one of those has been reviewed by the Court as well. I further have considered what's been said here in court today by [Ms. Brown's counsel] on behalf of the Defendant. I have considered the Defendant's comments, statement made here in open court. Comments and recommendations being made by the prosecuting attorney on behalf of the State of Ohio as well as the three statements made here in open court by different members of the church as well.
 {¶ 22} "In addition, the Court has considered the particular facts and circumstances of the offenses involved here, the nature of the offenses involved. All this is being considered together in light of the purposes and principles of felony sentencing which are set forth in 292911 [sic] of the Revised Code. The court has also considered as I must, the factors set forth under 292912 [sic] which have been touched upon briefly but I will review those at this time for purposes of the record."
 {¶ 23} After reviewing the factors of R.C. 2929.12, the court then sentenced Ms. Brown accordingly, well within the applicable range for felonies of the third degree, which is one to five years. See R.C. 2929.14(A)(3). Thus, it is clear the court *Page 7 
considered the purposes and principles of R.C. 2929.11 and R.C. 2929.12, properly applied post-release control, and sentenced Ms. Brown within the applicable range. Therefore, we determine that Ms. Brown's sentence is not clearly and convincingly contrary to law.
 {¶ 24} Nor does our review of the record reveal the trial court abused its discretion in selecting Ms. Brown's sentence within the permissible statutory range. Id. at ¶ 21, citing Kalish at ¶ 17. An abuse of discretion is more than an error of law or judgment; rather, it implies that that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 25} Ms. Brown specifically contends the court failed to consider her remorse, she has acknowledged her mental issues and is seeking treatment, and finally, she plans to make full restitution whether the court ordered it or not. She highlights the fact that a member of the congregation spoke on her behalf. The member explained that at first Ms. Brown did not show remorse, as was noted on the police reports, but that Ms. Brown has changed since the embezzlement was brought to light, has accepted responsibility for her actions, and would like to make full restitution for the harm she caused. Ms. Brown believes these mitigating factors were ignored by the trial court in passing its sentence and that these factors weigh against the severe sentence imposed.
 {¶ 26} The trial court, however, did not find Ms. Brown's remorse to be genuine, as this was her third offense of embezzlement. Each time she abused her fiduciary position as the caretaker of funds. Although she was placed on probation and was ordered to make restitution in the previous cases, she continued to embezzle in ever *Page 8 
increasing amounts, from several thousand dollars to the now almost two hundred thousand dollars in the present case.
 {¶ 27} In fact, the court was explicitly clear in why it considered this offense to be more serious and recidivism more likely, noting that the victims suffered not only economic harm, but serious psychological harm as well. The money Ms. Brown embezzled to spend on luxuries and vacations was donated by hardworking members of the congregation to support various missionaries and church programs. The church has lost members of its congregation and several leaders resigned. Volunteers worked thousands of hours to piece together the true accounting records. Further, Ms. Brown abused her position of trust over a lengthy period of time, which involved much scheming and planning. The court also noted that Ms. Brown obviously was not favorably affected by past probation sanctions because even when she was on probation, she was embezzling even greater amounts and preying on new victims. She did not take her counseling seriously, exaggerated her addiction to shopping, offered multiple excuses, and took no real responsibility for her actions. Thus, the court ultimately found her remorse disingenuous.
 {¶ 28} In coming to its conclusion, the court remarked: "You shed a lot of tears here today, offer a lot of apologies to the folks here today. Certainly have to question the sincerity of that. Because the fact of the matter is you have done this twice before. Certainly have to wonder whether those same tears, same apologies that you displayed here in court today were made on those prior occasions to two different judges who you were before. As a result of those tears and apologies, basically nothing happened to you. The conduct just continued on. *Page 9 
 {¶ 29} "Well, I am a firm believer, follower in that saying, `Fool me once, shame on you; fool on me twice shame on me.' While I may not have been the one fooled before in the past, I am not going to be fooled here today. * * * [T]he folks here, the church, entrusted you with being in charge of all their finances, not going to work today.
 {¶ 30} "You need to learn there are consequences from engaging in this type of conduct. Obviously didn't learn that in the past, the two prior times that you were on probation for the six years out of the last nine and a half years. But you will learn it today. If you don't learn it today at least you will be removed from society for a lengthy period of time. No other people can be victimized during that period of time."
 {¶ 31} As our above review indicates, it is obvious the court carefully and substantially deliberated the relevant statutory considerations, even explicitly stating them and their application to the present case. Contrary to Ms. Brown's assertions, the record supports the trial court's decision.
 {¶ 32} Thus, there is "nothing in the record to suggest the trial court's decision was unreasonable, arbitrary, or unconscionable."Stewart at ¶ 16, quoting Kalish at ¶ 20. Moreover, we defer to the trial court as to whether Ms. Brown's remorse was genuine in this instance since "the trial court was in a better position than this court to make that determination." Id. at ¶ 30, citing State v. Eckliffe, 11th Dist. No. 2001-L-105, 2002-Ohio-7136, ¶ 32, citing State v. Nutter (Aug. 24, 2001), 3d Dist. No. 16-01-06, 2001 Ohio App. LEXIS 3752, 5. Further, "[a] trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors in exercising its discretion." Id., quoting State v. Delmanzo, 11th Dist. No. 2007-L-218, 2008-Ohio-5856, ¶ 23. See, also, State v. Bean, 11th Dist. No. 2008-G-2839, *Page 10 2009-Ohio-682. The court clearly considered Ms. Brown's remorsefulness and we defer to its finding that she was less than sincere.
 {¶ 33} We determine Ms. Brown's sentence is not clearly and convincingly contrary to law as the court considered the principles and purposes of sentencing, sentenced Ms. Brown within the applicable range, and notified her that three years of post-release control was possible in this case. Nor do we find the court abused its discretion as the record reflects the court carefully and substantially deliberated the relevant statutory considerations in passing its sentence within the applicable range. Thus, Ms. Brown's sole assignment of error is without merit.
 {¶ 34} The judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, J., TIMOTHY P. CANNON, J., concur. *Page 1